1
2
3
4
5
6
7
8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOHN H. LEWIS, JR.,                          CASE NO. CV-F-05-1099 LJO

12              Plaintiff,                        **MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM**

13       vs.                                      **ADMINISTRATIVE DECISION** (Doc. 17)

14   JO ANNE BARNART,
     Commissioner of Social Security,

15              Defendant.

16   _____/

17          Plaintiff John H. Lewis Jr. ("claimant") seeks judicial review of an administrative decision

18   denying his claim for Disability Benefits under the Social Security Act, Title II ("Act").  Pursuant to 28

19   U.S.C. § 636( c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate

20   Judge, and by a December 22, 2005 order, this action was assigned to United States Magistrate Judge

21   Lawrence J. O'Neill for all further proceedings.  Pending before the Court is claimant's appeal from the

22   administrative decision of the Commissioner of Social Security ("Commissioner").

23          Claimant filed his complaint on August 26, 2005 and his opening brief on April 7, 2006. The

24   Commissioner filed her opposition to the appeal on May 8, 2006. Claimant filed a reply brief on May

25   22, 2006.

26                            **BACKGROUND**

27                        **Administrative Proceedings**

28          Claimant filed an application for Disability Insurance Benefits under the Social Security Act on

                                          1

September 4, 2001.  (Administrative Record "AR" 109-111.)  He alleges a disability onset of July 13, 2001 due to obesity, arthritis, diabetes, herniate cervical disc, carpal tunnel, and headaches. (AR 109, 123.)  Claimant's application for benefits was denied and the Appeals Council remanded the case for further proceedings.  (AR 98-99.) Claimant filed a new claim on March 2003, which was consolidated with the 2001 claim on remand.  (AR 17, 116-118.)  Claimant's application was denied by an Administrative Law Judge ("ALJ") in a decision issued on April 29, 2004. (AR 17-26.)  Claimant's application for benefits was denied and denied upon reconsideration. (AR 8-10.)  Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**Claimant's Background and Work Experience**

Claimant was born on November 9, 1951.  (AR 660.)  He completed the 10th grade.  (AR 660.) His past relevant work is as a truck driver.  (AR 661.)

**Medical History**

The pertinent medical history is summarized as follows.

The Record contains treatment records from Charles H. Boniske, M.D. beginning 1995 in which he treated claimant for psoriatic arthritis, gout, and obesity. (AR 208-240.)

An MRI of the cervical spine on July 16, 2001 shows left lateral disc protrusion at C6-7 causing moderate foraminal narrowing on the left.  (AR 297.)  Cervical spine x-rays on June 6, 2001 were "essentially negative."  (AR 298.)

Claimant filed a worker's compensation claim.  On July 25, 2001, at a worker's compensation visit, William Yale, M.D., found claimant permanent and stationary.  (AR 199-200.)

State Agency physician Murray Mitts, M.D. completed the Physical Residual Functional Capacity Assessment form on November 19, 2001.  (AR 351-358.)  Dr. Mitts found claimant could lift 20 pounds occasionally, and 10 pounds frequently, sit/stand/walk 6 hours out of eight.  (AR 352.) Claimant had postural limitations of climbing, stooping, crouching and crawling.  (AR 353.)

On January 2, 2002, Daniel Gibson, M.D. opined that claimant has mild osteoarthritis of the first metatarsal phalangeal joints and no evidence of clear erosive disease and increased his dosage of methotrexate, and continued him on Celebrex, allopurinal and celexa.  (AR 284-283.)

Claimant had a cervical fusion on February 8, 2002.  (AR 328, 364, 405-407.) Mild spondylosis

in the upper cervical spine without significant disc space narrowing was seen on June 4, 2002.  (AR 364.)

On March 13, 2002, work restrictions were placed on claimant from March 13, 2002 to May 13, 2002 that claimant could not lift his arms above his shoulder level, repetitively use his left arm or wrist. (AR 381.)  On April 24, 2002, work restrictions were assessed that claimant could return to work from April 24, 2002 through June 25, 2002 with restrictions on not to lift arms above shoulder and not to lift over 10 pounds.  (AR 371.)

An MRI of the left shoulder on April 20, 2002 showed a partial tear of the rotator cuff involving the musculotendinous junction of the supraspinatus muscle and tendon without impingement.  (AR 464.) An MRI of the left hip also on April 20, 2002 showed no significant abnormalities of the pelvis or left hip.  (AR 465.)

A stress nuclear scan on October 21, 2002 by Shashi Sharma, M.D., showed a normal stress myocardial scan.  (AR 393.)  X-rays of the chest were normal.  (AR 397.)

An MRI of the lumbar spine on November 6, 2002 showed a 4-5 mm central and left paracentral disc protrusion at L5-S1 abutting the left S1 nerve root, no central canal stenosis, mild facet hypertrophy at L4-5 and L5-S1.  (AR 399.)

Claimant saw Niranjan M. Sharma, M.D. for emotional/mental problems in August 2001-November 2002. (AR 401-404.)  Claimant complained of anger, mood swings, and depression.  (AR 403.)  He was assessed with bipolar disorder, ADHA and personality disorder.  (AR 404.)  The was given therapy and Depakote.

On September 5, 2002, Alan Sanders, M.D., completed an orthopedic examination for worker's compensation.  (AR 409-38.)  Dr. Sanders opined that he did not believe claimant suffered from carpal tunnel syndrome, and stated that the invasive treatment that claimant had received was questionable. (AR 19, 428, 432-34).  He opined that many of the problems arise from psoriatic arthritis which affects multiple joints and body parts.  (AR 433.)  Dr. Sanders also indicated that claimant suffered from diabetes, which caused neuropathy and resulted in abnormal nerve tests. (AR 433). Dr. Sanders assessed claimant with frequent minimal to slight neck, shoulder, wrists and hand pain and slight low back, left hip and left knee pain.  (AR434.)  Dr. Sanders restricted work activity prophylactically from heavy work,

1    from repetitive heavy gripping, grasping and from prolonged kneeling and squatting.  (AR 435.)

2        On December 4, 2002, Dinesh Sharma, M.D., opined that claimant was "temporarily disabled"
3    and "unable to work as a truck driver." (AR 443.)

4        On December 16, 2002, Edward McGinn, M.D., examined claimant and opined he is "obviously
5    disabled with limitations of the neck movements, radicular pain in the left leg, arthritic problems
6    involving the hands and feet and left carpal tunnel syndrome." (AR 449.)  He was advised to loose
7    weight, but Dr. McGinn could not complete disability forms because he did not have that capability to
8    determine specific functions.  (AR 449.)

9        A mental assessment by Niranja Sharma, M.D., on December 23, 2002 opined that claimant was
10   slightly limited to moderately limited in understanding and memory, sustained concentration and
11   persistence, and adaption.  (AR 450-454.)  He opined claimant has attention deficit hyperactive disorder
12   and a learning disability and could not handle job related responsibilities and stress.  (AR 454.)

13       Claimant was referred to Joel Grossman, M.D. for thrombocytompenia on November 6, 2002.
14   (AR 456.)  He reported that he bleeds easily if he cuts himself "doing jobs in the garage" and he feels
15   reasonably well and has no specific complaints other than his psoriatic arthritis.  (AR 456.)

16       On July 24, and November 6, 2002, Scott Conner, M.D., opined that claimant was "temporarily
17   totally disabled," and should only do light duty, with no overhead work, and with limited
18   bending/lifting/twisting.  (AR 286, 460.)

19       On February 17, 2003 and April 9, 2003, claimant returned to Dr. Niranjan Sharma for follow
20   up treatment.  (AR 468.)  Dr. Sharma noted claimant "was able to cope with [the] situation" despite
21   "some depression and some anger outbursts periodically" which outbursts were reportedly caused by
22   claimant's divorce and the denial of disability benefits. (AR 468-70.)

23       On March 11, 2003, claimant saw Paul Gertler, M.D. for a follow up on carpal tunnel.  (AR 601.)
24   Dr. Gertler administered a nerve conduction study and other tests which resulted in an assessment of
25   bilateral carpal tunnel syndrome with mild prolongation.  (AR 601.)

26       Claimant saw James Barbabella, M.D. on April 16, 2003 for diabetes millitus, mixed
27   hyperlipidemia and gout.  (AR 473.)  It was noted the diabetes was controlled but the other conditions
28   had worsened - hyperlipidemia, obesity and depression, and including sensory disturbance of the feet.

1   (AR 473.)

2       On May 5, 2003, claimant was seen by Don Schengel, M.D. for a orthopaedic surgery

3   consultation, but Dr. Schengel did not have the claimant's medical records to review.  (AR 475.)  Dr.

4   Schengel gave claimant an injection.  (AR 477.)

5       State agency physician, Evangeline Murillo, M.D. completed the Mental Residual Functional

6   Capacity form on June 4, 2003.  (AR 500-502.)  Dr. Murillo opined that claimant was not significantly

7   limited in understanding and memory, sustained concentration and persistence, social interaction or

8   adaption.  Dr. Murillo opined that claimant retains the ability to sustain simple instruction for 2 hour

9   increments and able to interact, socialize and adapt and respond to work changes.  (AR 502.)

10      On May 27, 2003, claimant was examined in an agreed medical evaluation by Harvey

11  Friedlander, M.D., orthopaedic surgeon.  (AR 525.)  He opined that claimant should refrain from heavy

12  work, and had lost some of his capacity for bending, stooping, lifting, pushing, pulling, climbing, and

13  other activities requiring comparable effort. (AR 569.)  He did not have specific work restrictions due

14  to claimant's left knee.  (AR 569.)

15      On June 29, 2003 claimant presented for a comprehensive internal medicine evaluation by Nayan

16  Shah, M.D.  (AR 518- 524.)  Claimant complained of left shoulder rotator cuff tear, low back and left

17  leg pain and gout.  (AR 518.)  After examination, Dr. Shah assessed claimant as able to sit, stand and

18  walk 6 hours in eight; reduced strength of the left lower extremity; lift and carry 50 pounds frequently

19  and 100 pounds occasionally but lift 10 pounds occasionally with the left side and 20 pounds frequently.

20  (AR 523.)  He did not find postural or manipulative limitations.

21      In April and October 2003, claimant returned to Daniel Gibson, M.D., for follow-up treatment

22  and found claimant's gout and psoriatic arthritis were responding well to Methotrexate, Celebrex and

23  increased Allopurinol: "With increasing the allopurinal, he has had a marked decrease in the intermittent

24  bouts of pain, and they are not only less frequent, but also less intense." (AR 591, 595-96.)  The increase

25  in Allopurinol led to a reduction in uric acid and pain.  (AR 591, 595-96.)

26      In February, April, June, and August, 2003 claimant saw Niranjan Sharma, M.D. with complaints

27  of depression.  (AR 608-610.)  He was giving therapy and medication.

28      On October 29, 2003, claimant returned to Niranjan Sharma, M.D. complaining that depression

1   was getting worse due to chronic health issues and pending divorce.  (AR 606.)

2        November 2003 X-rays of the hips and knees showed mild medial joint space narrowing. (AR
3   639-40.)

4        On January 28, 2004, claimant returned to Paul Detler, M.D. who found "a definite trend" and
5   progression of his carpal tunnel syndrome.

6        On January 14, 2004 and March 1, 2004, claimant returned to Naranjan Sharma, M.D. for
7   psychiatric counseling following his divorce and denial of disability which caused him depression. (AR
8   644-645.)

9                              **Hearing Testimony**

10       Claimant testified that he cannot read or write.  (AR 660.)  He did a lot of lifting and carrying
11  in his past relevant work; carrying 50 to 100 pounds.  (AR 662.)  He quit because of pain in his upper
12  back and shoulders.  (AR 663.)  He has had bouts of depression his whole life. (AR 664.)  He has carpal
13  tunnel in both hands, torn rotary cuff, protruding disc, psoriatic arthritis, and gout.  (AR 664.)  During
14  a gout attack, he has to lie flat on his back.  (AR 665.)  He cannot raise his arms.  (AR 665.)  He cannot
15  lift 10 pounds.  (AR 669.)  He has pain in the shoulder, wrists, lower back, and left leg.  (AR 669.)  He
16  can sit for 30 minutes and stand for fifteen.  (AR 669.)  His medication makes him sleepy, tired and he
17  gets diarrhea from others.  (AR 670.)  He had a fusion in his neck, the pain was reduced, but he has less
18  mobility and turning.  (AR 674.)

19       Claimant's wife Joann Lewis testified.  (AR 680.)  She said she has seen him in pain every day.
20  Lifting anything causes him pain.  (AR 681.)  He has a gout flare up once a month.  (AR 681.)  His pain
21  has gotten worse. He has trouble sleeping.  (AR 684.)  She writes all his forms and applications for him.
22  (AR 685.)

23       Following remand from the Appeals Council, further testimony was taken.  (AR 689.)  Claimant
24  testified that his wife left him.  (AR 702.)  His medications affect him.  (AR 702.)  He has lower back
25  pain, but medications help.  (AR 703.)  He has gout in his right foot which flares up one a month and
26  lasts for 2-4 days.  (AR 704.)  He can't walk or put shoes on.  (AR 704.)  He uses a TENS unit twice a
27  week.  (AR 705.)  His diabetes is not controlled and he only tries to control it with diet.  (AR 706.)  He
28  has gripping strength problems with his hands.  (AR 707.)  He has bad depression which makes him not

1  want to do anything. (AR 708.) He takes Vicodin for pain about 6 times a day. (AR 710.) The Vicodin
2  makes him tired and sleepy. (AR 710.) He spends most of his day in bed. He can walk for 10 minutes,
3  sit for 2.5 hours, lift and carry 10 pounds. (AR 710-711.) He wears wrist braces at night for the carpal
4  tunnel.

5  Claimant's daughter, Jennifer Lewis, testified. (AR716.) Ms. Lewis is 26 years old and lives
6  with her father. (AR 716.) She moved in with him to help him; he can't get groceries, can't sit too long,
7  can't stand. (AR 718.) He complains of pain. (AR 719.)

8  In a third hearing, claimant testified he has not had surgery on his left shoulder because worker's
9  compensation will not pay for it. (AR 738.) He said that when he has an outbreak of psoriasis, his
10  arthritis gets worse. (AR 739.) The medication he takes for anger management makes him depressed.
11  (AR 740.)

12  Vocational Expert ("VE") Judith Najarian testified. (AR 745.) The VE was given the
13  hypothetical where the claimant could lift 20 pounds occasionally and 10 pounds frequently; sit, stand
14  or walk 6 hours out of 8; occasionally crouch; no overhead lifting with his left upper extremity; not
15  operate machines that required the use of foot controls with left leg; simple repetitive work with little
16  interaction with the public; no forceful grasping with either hand. (AR 745.) The VE testified that
17  claimant does not have transferable skills, but there would be jobs claimant could perform at the
18  unskilled sedentary and light levels. (AR 745-746.) At the light level, a job would be as a mail sorter,
19  bottle packer which involves repetitive grasping, and photocopy machine operator. (AR 746-747.)

20  In another hypothetical, the VE was asked to assume a gout flare up which would last for 2-3
21  days per month. (AR 747.) The VE stated that there would not be jobs in which he could miss that
22  amount of work. (AR 748.) In another hypothetical, claimant could sit 45 minutes to an hour, 2.5 hours
23  total out of 8; stand 1 hour in 8; lift 10 pounds but not with the left arm and walk one block. (AR 748.)
24  The VE testified that there would not be work that the claimant could perform. (AR 748.) If the
25  claimant was unable to concentrate for two hours, the VE testified that there would not be unskilled
26  work he could perform. (AR 749.) With moderate mental limitations, the VE testified that claimant
27  could not perform work. (AR 750.)

28  ////

**ALJ Findings**

In his April 29, 2004 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (AR 17.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 25-26):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's history of obesity, psoriatic arthritis and/or gouty arthritis, left shoulder pain, left hip pain, mild depression, diabetes mellitus, bilateral carpal tunnel syndrome are considered "severe" based on the requirements in Regulations 20 CFR §404.1520 ( c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The ALJ finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: lift 20 pounds occasionally, lift and carry 10 pounds frequently, and stand, walk, and sit for six hours in an eight-hour day. He is able to crouch occasionally, he is unable to perform overhead lifting or overhead work with his lift [sic] upper extremity. He is unable to use foot controls with his left lower extremity. He is unable to perform repetitive forceful grasping with either hand. Mentally, he is able to perform simple, repetitive tasks with little or no public interaction.

7. The claimant is unable to perform his past relevant work as a truck driver. 20 CFR §404.1565.

8. The claimant is a "younger individual between the ages of 45 and 49." 20 CFR §404.1563.

9.    The claimant has "a limited education." 20 CFR §404.1564.

10.   The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case. 20 CFR §404.1568.

11.   The claimant has the residual functional capacity to perform a significant range of light work.  20 CFR §404.1567.

12.   Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.17 as a framework for decision making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as mail sorter, bottle packer, and photocopy operator.

13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision. 20 CFR §404.1520(f).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision.  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).  Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

1   Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to

2   determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence

3   in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

4   Claimant contends the ALJ's erred as follows: (1) rejecting the opinion of treating psychiatrist

5   Dr. Niranjan M. Sharma, (2) rejecting the opinion of Dr. Friedlander, (3) not adopting the opinion of Dr.

6   McGinn, (4) failed to give reasons for rejecting witness testimony, (5) rejecting claimant's testimony,

7   (6) limitations due to gout, (7) not relying upon the grids/use of a VE, (8) consider medication side

8   effects, (9) reading and writing testimony.

9                                **The Sequential Analysis**

10   To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial

11   gainful activity due to a medically determinable physical or mental impairment which has lasted or can

12   be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382a(3)(A).

13   To achieve uniformity of decisions, the Commissioner has promulgated regulations which

14   contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is

15   physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   If during any point

16   of this review, it is determined that the claimant is not disabled, the claim is not to be considered further.

17   20 C.F.R. §§ 404.1520(a) and 416.920(a).   The five-step process is summarized as follows:

18        1.   Determination of whether the claimant is engaged in substantial gainful activity, and if

19             so engaged, the claimant is not presumed disabled and the analysis ends;

20        2.   If not engaged in substantial gainful activity, determination of whether the claimant has

21             a severe impairment; if the claimant does not, the claimant is not presumed disabled and

22             the analysis ends;

23        3.   If the claimant has a severe impairment, determination of whether any such severe

24             impairment meets any of the impairments listed in the regulations;[1] if the claimant does

28        [1]      *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

1    have such an impairment, the claimant is disabled and the analysis ends;[2]

2    4.    If the claimant's impairment is not listed, determination of whether the impairment

3          prevents the claimant from performing his or her past work;[3] if the impairment does not,

4          the claimant is not presumed disabled and the analysis ends; and

5    5.    If the impairment prevents the claimant from performing his or her past work,

6          determination of whether the claimant can engage in other types of substantial gainful

7          work that exist in the national economy;[4] if the claimant can, the claimant is not disabled

8          and the analysis ends.

9          The claimant has the initial burden of proving the existence of a disability within the meaning

10   of the Act.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  The claimant establishes a prima

11   facie case of disability by showing that a physical or mental impairment prevents him from engaging in

12   his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§

13   404.1520(f) and 416.920(f).

14        In this case, claimant convinced the ALJ that he met the criteria in step one of the sequential

15   analysis; that he has not been engaged in substantial gainful employment.

16        At step two, the ALJ must determine if the impairment is severe.  The ALJ determined that the

17   medical evidence establishes severe impairments of obesity, psoriatic arthritis and/or gouty arthritis, left

18   shoulder pain, left hip pain, mild depression, diabetes mellitus, and bilateral carpal tunnel syndrome.

19        At step three, the ALJ found that claimant did not have any impairment or combination of

20   impairments meeting or equaling the listings.

21   /////

22

23        [2]    If a claimant is found to have an impairment which meets or equals one of the listed impairments, a
     conclusive presumption of disability applies and the claimant is entitled to benefits.  *See Marcia v. Sullivan*, 900 F.2d 172,
24   174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key  v. Heckler*, 754 F.2d 1545, 1548) (9th
     Cir. 1985.
25

26        [3]    At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared
     with his or her present capacity.  *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. §
27   416.945(a).

28        [4]    At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and
     vocational factors such as age, education and past work experience.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

### The ALJ's Finding of Residual Functional Capacity

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382(a)(3)(A).

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546.  "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments.  20 C.F.R. §§ 404.1545(a) and 416.945(a).  Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work.  20 C.F.R. §§ 404.1567 and 416.967.  In this case, the ALJ found that plaintiff had the residual functional capacity to perform light work with restrictions.  "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).  If someone can do light work, it is determined that he or she can also do sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567 and 416.967. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. §§ 404.1567(a) and 416.967(a).

Here, the ALJ found claimant has the residual functional capacity to lift 20 pounds occasionally, lift and carry 10 pounds frequently, and stand, walk, and sit for six hours in an eight-hour day. He is able to crouch occasionally, he is unable to perform overhead lifting or overhead work with his left upper extremity.  He is unable to use foot controls with his left lower extremity.  He is unable to perform repetitive forceful grasping with either hand.  Mentally, he is able to perform simple, repetitive tasks

1    with little or no public interaction.  (AR 25, Finding No. 6.)

2        The ALJ gave a detailed summary of the facts and conflicting clinical evidence.  (AR 18-23.)

3    The ALJ reviewed all of the objective medical evidence in the record, including Dr. Boniske's treatment

4    records, Dr. Dinesh Sharma's treatment records, records from Dr. Conner and Dr. Zmoleck, the qualified

5    medical examination of Dr. Sanders, treatment records of Dr. Barbabella, report of Dr. Friedlander,

6    agreed medical examiner, consultative examination report of Dr. Nayan Shah, mental treatment notes

7    of Dr. Niranjan Sharma, other medical treatment notes, claimant's medications and the MRIs.

8        In particular, the ALJ relied upon a combination of physical assessments from reviewing state

9    physician Dr. Murray Mitts, concurring state agency physician Dr. Brian Ginsburg and consultative

10   examiner Dr. Nayan Shah.  Dr. Mitts found claimant could lift 20 pounds occasionally, and 10 pounds

11   frequently, sit/stand/walk 6 hours out of eight.  (AR 352.)  Claimant had postural limitations of climbing,

12   stooping, crouching and crawling.  (AR 353.)  Dr. Mitts assessment was affirmed by Dr. Ginsburg.  (AR

13   359.)  Dr. Shah assessed claimant as able to sit, stand and walk 6 hours in eight; reduced strength of the

14   left lower extremity; lift and carry 50 pounds frequently and 100 pound occasionally but lift 10 pounds

15   occasionally with the left side and 20 pounds frequently.  (AR 523.)  The opinion of a reviewing

16   physician and the ALJ's conducting an independent analysis of the medical evidence may constitute

17   substantial evidence. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995); *Tonapetyan v. Halter*, 242

18   F.3d 1144, 1149 (9th Cir. 2001) (holding examining physician's opinion that claimant could lift and carry

19   20 to 50 pounds constituted "substantial evidence" in support of ALJ's finding that claimant could

20   perform medium work, where examining physician's opinion was based on results of "his own

21   independent examination").

22       Claimant criticizes the ALJ for rejecting the opinion of mental limitations from psychiatrist Dr.

23   Niranjan Sharma. Claimant argues that Dr. Sharma did not opine that claimant could understand and

24   carry out simple repetitive work, as the ALJ found.

25       Here, the ALJ found that claimant can perform simple, repetitive tasks with little or no public

26   interaction. (AR 25, Finding no. 6.)  The ALJ said he gave Dr. Sharma's opinion "some weight."  (AR

27   22.) After reviewing the treatment notes from Dr. Naranjan Sharma, the ALJ noted that claimant had

28   a "long, steady work history," despite reporting to Dr. Sharma that "he had emotional trouble since

childhood." The ALJ also noted that notwithstanding the longevity of the emotional problems, claimant "did not seek or receive psychiatric treatment prior to August 2002." The ALJ concluded from this evidence that his symptoms did not affect his ability work. (AR 23.)  Further, from his review of the mental treatment notes, the ALJ found:

> "It is also notable that the claimant's symptoms seem to have stabilized since he began taking medication; thus, his depressive symptoms should impose only a mild degree of limitation on his ability to perform his activities of daily living and his ability to maintain concentration, persistence, and pace." (AR 23-24.)

Reviewing state agency physician Dr. Murillo opined that claimant was not significantly limited in understanding and memory, sustained concentration and persistence, social interaction or adaption. Dr. Murillo opined that claimant retains the ability to sustain simple instruction for 2 hour increments and able to interact, socialize and adapt and respond to work changes. (AR 502.)  The opinion of a reviewing physician and the ALJ's conducting an independent analysis of the medical evidence may constitute substantial evidence. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

Claimant argues that among Dr. Sharma's evaluation, he rated claimant as moderately limited in some areas of understanding and memory, sustained concentration and adaption. (AR 450-451.) The form completed by Dr. Sharma defined "moderately limited" as an impairment which affects but does not preclude ability to function. (AR 450.)  Moderate symptoms are not incompatible with the ability to work. See 20 C.F.R. §§ 404.1520a(b)-(c), 416.920a(b)-(c). The Court does not find error in the ALJ's conclusion that claimant could perform simple repetitive functions.  Dr. Sharma opined that claimant was only slightly limited  in his ability to understand and remember very short and simple instructions and only moderately limited in ability to carry out such instructions. (AR 450-451.)

Claimant also argues that the ALJ erred in rejecting the opinion of the Agreed Medical Evaluation by Dr. Friedlander.

The ALJ noted the opinion of Dr. Friedlander: " that the claimant's permanent disability was not likely to improve with medication or surgical treatment." (AR 20.)  The ALJ rejected Dr. Friedlander's opinion for two reasons.  First, the ALJ rejected the opinion because it was an opinion reserved to the Commissioner.  See 20 C.F.R. § 404.1527(e)(1) and 416.927(e)(1) (opinions on issues reserved for the Commissioner).   "[T]he opinion of the treating physician is not necessarily conclusive as to either the

physical condition or the ultimate issue of disability.'" *Morgan v. Comm'r of the Social Sec. Admin.,* 169 F.3d 595, 600 (9th Cir.1999). A treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989).

Second, the ALJ stated that the opinion by Dr. Friedlander was for worker's compensation purposes which has a different purpose than that of the Social Security Act:

> "Further the opinions were prepared in connection with the claimant's case in the Workers' Compensation system which focuses strictly on an individual's ability to return to prior work rather than the ability to perform any work." (AR 22.)

Social Security and Worker's Compensation terms are not equivalent. *Macri v. Chater,* 93 F.3d 540, 544 (9th Cir. 1996). Workers' compensation disability ratings are not controlling in disability cases decided under the Social Security Act, and the terms of art used in the California workers' compensation guidelines are not equivalent to Social Security disability terminology. *Id.*; *See also Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988) ("The categories of work under the Social Security disability scheme are measured quite differently [than workers' compensation].") The ALJ must evaluate medical opinions couched in state workers' compensation terminology just as he or she would evaluate any other medical opinion. See *Coria v. Heckler,* 750 F.2d 245, 247-248 (3rd Cir. 1984) ("the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"). The ALJ's decision need not contain an explicit "translation," it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence. *See Booth v. Barnhart*, 181 F.Supp.2d 1099, 1106 (C.D.Cal. 2002). In analyzing medical opinions using state workers' compensation terminology, the ALJ "is entitled to draw inferences 'logically flowing from the evidence.' " *Macri,* 93 F.3d at 544.

1    Dr. Friedlander's assessment was indeed within the confines of worker's compensation, and he

2    opined that claimant "has a disability best described as Category E."   Dr. Friedlander opined that

3    claimant should refrain from heavy work, and had lost some of his capacity for bending, stooping,

4    lifting, pushing, pulling, climbing, and other activities requiring comparable effort. (AR 569.)  He did

5    not have specific work restrictions due to claimant's left knee.  (AR 569.)  The ALJ took this opinion

6    into consideration because the ALJ found claimant was incapable of heavy work and found some

7    limitations in overhead work and left lower extremity.  (AR 25, Finding no. 6.)  It was the conclusion

8    of permanent disability that the ALJ rejected.

9    Like the ALJ's rejection of Dr. Friedlander, the ALJ similarly rejected the opinion of Dr. McGinn

10   as one reserved to the Commissioner on the ultimate issue of disability.  (AR 22.)   Dr. McGinn

11   examined claimant and opined clamant is "obviously disabled with limitations of the neck movements,

12   radicular pain in the left leg, arthritic problems involving the hands and feet and left carpal tunnel

13   syndrome." (AR 449.)  In addition, the ALJ rejected Dr. McGinn's opinion because it was one which

14   was prepared for the worker's compensation case in which the focus of the opinion was whether

15   claimant could return to his prior work.  Here, the ALJ agreed that claimant could not return to his prior

16   work.  (AR 25, Finding no. 7 "the claimant is unable to perform any of his past relevant work.")

17   Thus, the ALJ's did not err in rejecting these opinions.

18   **Claimant's Testimony**

19   Claimant argues that the ALJ erred in not finding claimant credible.

20   A claimant's credibility generally becomes important at the stage where the ALJ is assessing

21   residual functional capacity, because the claimant's subjective pain statements may tell of greater

22   limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan*

23   *v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's

24   statements regarding her limitations merely because they are not supported by objective evidence. *Fair*

25   *v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding

26   the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of

27   credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements

28   concerning the symptoms, and other testimony by the claimant that appears less than candid; (2)

16

unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148. An ALJ may consider the following factors to determine the credibility of a claimant's allegations of disabling pain:

(1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)    Treatment, other than medication, for relief of pain;

(5)    Functional restrictions;

(6)    Claimant's daily activities;

(7)    Unexplained, or inadequately explained, failure to seek treatment or follow up a prescribed course of treatment; and

(8)    Ordinary techniques to test a claimant's credibility.

*Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991).

In rejecting claimant's subjective complaints, the ALJ made specific findings. First, the ALJ reviewed and accurately summarized plaintiff's testimony from the hearing. (AR 22-23.) The ALJ then relied upon the medical evidence in the record in finding that the claimant's impairments are not as limiting as he alleges. (AR 23.) His "diabetes is controlled by diet. The evidence shows that the claimant has responded to the prescribed medication for psoriatic arthritis." (AR 23.) (Evidence citations omitted.) The ALJ reviewed the radiological evidence:

> "X-rays performed in November 2002 of the lumbosacral spine, left wrist, right wrist, and left knee showed only mild degenerative changes. X-rays of the claimant's hip in November 2003 showed possible minimal early degenerative changes. X-rays of the claimant's knees in November 2003 showed only mild narrowing of the medial joint spaces. " (AR 23)

17

1        (Evidence citations omitted.)

2   Indeed, Dr. Sanders opined that he did not believe claimant suffered from carpal tunnel syndrome, and

3   stated that the invasive treatment that claimant had received was questionable and that many of the

4   problems arise from psoriatic arthritis which affects multiple joints and body parts.  (AR 19, 428,

5   432-34, 433.) While subjective pain testimony cannot be rejected on the sole ground that it is not fully

6   corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining

7   the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th

8   Cir. 2001). The need for infrequent or conservative treatment may refute allegations of disabling pain

9   or impairment.  *See Fair v. Bowen*, 885 F.2d at 603-04.

10          The ALJ noted specific discrepancies in the record with claimant's complaints:

11              "The claimant reported to Dr. Barbabella, his rheumotologist, that his
                depression is manifested by fighting, throwing carts in stores, and by
12              trying to run people off the road.  The Administrative Law Judge finds
                this degree of physical activity, if true, is inconsistent with an individual
13              who suffers from debilitating physcial impairments; if untrue, it is
                evidence of exaggeration an fabrication." (AR 23.)
14

15   The ALJ continued with the discrepancies, noting claimant's ability to do some work:

16              "Further, the claimant told the Samsun oncologist in November 2002 that
                he bleeds easily when he cuts himself while "doing jobs' in his garage.
17              Again, this is inconsistent with disability."  (AR 23) (Evidence citations
                omitted.)
18

19   The ALJ noted that the emotional problems were not as debilitating as claimant alleged:

20              "The claimant reported to Dr. Niranjan Sharma that he had emotional
                trouble since childhood, and as an adult had fought and was violent.  It
21              is important to note, however, that the claimant did not seek or receive
                psychiatric treatment prior to August 2002.  The lack of treatment
22              suggests that his symptoms did not affect his ability to work as he has a
                long, steady work history."  (AR 23) (Evidence citations omitted.)
23

24   As a final reason for a negative credibility assessment, the ALJ compared claimant's testimony,

25   applications and medical records:

26              "For instance, the claimant testified he cannot read or write, yet he
                completed the tenth grade.  He indicated in the Disability Report that he
27              was able to read English and could write more than his name in English.
                The claimant drove a truck interstate for many years.  In his work history
28              report, the claimant stated that he prepared freight bills and a log book.

> He was likely required to read a road map and to have knowledge of
> commercial driving regulations and area roads.  Thus, the discrepancies
> in the claimant's testimony, in written statements during the application
> and in the medical records lessens his credibility."  (AR 24.)

Claimant argues that this assessment of his ability to read and write is incorrect because he testified that he is "terrible" at reading and writing and only did so at the seventh or eighth grade level, not that he could not read or write at all.

The Court finds no error in the ALJ's inference.  At the second hearing, the claimant testified that "he cannot read or write."  (AR 660.)  The ALJ took his testimony literally.  The ALJ is entitled to draw inferences logically flowing from the evidence in the proceedings before him.  *See Macri v. Chater*, 93 F.3d 540, 543-44 (9th Cir. 1996).

Here, the ALJ considered numerous of the *Bunnell v. Sullivan*, factors for determining credibility. "Credibility determinations are the province of the ALJ."  *Fair v. Bowen*, 885 F.2d at 604.  Thus, there is substantial evidence in the record to support the ALJ's rejection of plaintiff's subjective complaints. *See Light v. Social Security Administration*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may consider inconsistencies between a claimant's testimony and statement from physicians about the nature, effect, and severity of symptoms.); *Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (an ALJ may properly disregard a claimant's self-serving statements that were unsupported by the medical evidence.)

Accordingly, the Court finds no error in the ALJ's evaluation of claimant's subjective complaint testimony.

Claimant argues that the ALJ failed to adequately consider that the claimant's persistent efforts to obtain pain relief enhances his credibility.  Claimant cites Social Security Ruling 96-7p.

Social Security Ruling 96-7p provides in pertinent part that persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms. *Hardman v. Barnhart*, 362 F.3d 676 (10th Cir. 2004) (error for the ALJ to fail to

1  expressly consider claimant's persistent attempts to find relief from his pain, his willingness to try

2  various treatments for his pain, and his frequent contact with physicians concerning his pain-related

3  complaints.)

4      Here, the ALJ fully considered claimant's complete medical treatment record.  He considered

5  the mental impairment treatment (AR 21-23), and his physical impairment treatment. (AR 22-23.) Thus,

6  the ALJ adequately considered the claimant's treatment efforts.

7  **Rejecting Testimony Regarding Gout**

8      Claimant argues that the ALJ failed to adopt his testimony that he has gout attacks once a month

9  which last for up to 4 days.

10      The ALJ found that gout was a severe impairment, but one which did not meet the Listings. (AR

11  25, Finding no.3.)   The medical evidence showed that claimant's gout and psoriatic arthritis were

12  responding well to Methotrexate, Celebrex and increased Allopurinol: "With increasing the allopurinal,

13  he has had a marked decrease in the intermittent bouts of pain, and they are not only  less frequent, but

14  also less intense." (AR 591, 595-96.) The ALJ so noted this evidence. (AR 21.) The substantial evidence

15  in the record supports the ALJ's decision not to adopt the extent and duration of gout flare ups. (AR 22-

16  23). Where the evidence is susceptible to more than one rational interpretation, the court may not

17  substitute its judgment for that of the Commissioner. *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir.

18  1999).

19  **Lay Witness Testimony**

20      Claimant argues that the ALJ erred in failing to adopt the testimony of witness Jennifer Lewis,

21  claimant's daughter.

22      The ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each

23  witness whose testimony he rejects. *Smolen v. Chater*, 80 F.3d 1273, 1288, 1292 (9th Cir. 1996) (finding

24  the ALJ's reasons for rejecting lay testimony insufficient and thus crediting the testimony).  Lay witness

25  testimony is "qualified evidence" that the ALJ must consider.  *See Sprague v. Bowen,* 812 F.2d 1226,

26  1231-32 (9th Cir.1987).

27      The ALJ considered claimant's daughter's testimony:

28          "The claimant's daughter testified that she lives with her father and does

20

> all the work around the house.  He [sic] said her father is always on the
> couch.  She said her father's depression has been bad since his wife left
> him.  She stated that the drive to Santa Barbara was long because her
> father was in pain and had to stop often." (AR 23.)

Claimant's daughter thus offered testimony in two areas: pain and mental condition. The ALJ found her testimony only partially credible because "it seems somewhat exaggerated."  (AR 23.)

The ALJ then launched into a summarization of the objective medical evidence, as discussed above, which showed that the impairments were not as severe as alleged.  The ALJ reviewed the mostly mild objective medical evidence of the impairments which would purport to render pain. (AR 23.) The ALJ also reviewed the mental/depression evidence and particularly noted "that the claimant's symptoms seem to have stabilized since he began taking medication; thus, his depressive symptoms should impose only a mild degree of limitation on his ability to perform his activities of daily living and his ability to maintain concentration, persistence, and pace." (AR 24.)  Lack of support in the medical evidence is a recognized basis to reject lay evidence. *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.") The ALJ's partial acceptance of the daughter's testimony and the recitation of the relevant objective evidence are substantial evidence.

### Medication Side Effects

Claimant argues that the ALJ failed to properly consider the side effects of claimant's medication - drowsiness.

> The ALJ considered the testimony of claimant that his medication caused his to become sleepy.
> "He said he takes Vicodin when needed, and it varies, but it makes him
> groggy and unable to focus." (AR 23.)

The ALJ considered that the medication was minimal and conservative treatment, with primarily pharmacological remedies. (AR 23.)  *See Miller v. Heckler,* 770 F.2d 845, 849 (9th Cir.1985) (requiring clinical evidence to support claims of impairing side effects from medication).  Thus, the ALJ considered the claim of medication side effects, but found the claim lacked evidence to support it.  The Court finds no error.

/////

/////

21

1                                    **Grids/VE**

2          Claimant argues that if he were limited to sedentary work and hand no transferable skills, he

3   would be found "disabled" under the grids.

4          Here, as discussed *infra*, there is substantial evidence in the Record to support the ALJ's finding

5   of light work with restrictions.  Claimant's argument asks the Court to reconsider the evidence and find

6   a different residual functional capacity assessment from that found by the ALJ.  The courts do not have

7   the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs

8   to the Commissioner alone. *Richardson v. Perales*, 402 U.S. at 399.

9          At Step Five, it is the Commissioner's burden to establish that jobs exist in the national economy

10  that the plaintiff can perform. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); 20 C.F.R.

11  §404.1520(f).  The Commissioner may meet this burden in two different ways: (1) the testimony of a

12  vocational expert ("VE"), or (2) by reference to the Medical-Vocational Guidelines at 20 CFR Part 404,

13  subpart P ("grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  Where the testimony of

14  a VE is used at Step Five, the VE must identify a specific job or jobs in the national economy having

15  requirements that the claimant's physical and mental abilities and vocational qualifications would

16  satisfy. *Id.* at 1162-1163.

17         Claimant argues that VE testified that there would not be any jobs claimant could perform with

18  the gout flare-ups once a month or the limitations in lifting, standing or walking as claimant testified.

19  (Opening brief, p. 26.)

20         Claimant's argument implies that the ALJ should have credited claimant's underlying testimony

21  regarding his limitations.  The ALJ, however, did not accept claimant's testimony of his limitations as

22  credible. (AR 25, finding no. 5.)  In his decision, the ALJ rejected plaintiff's testimony as to the severity

23  of his limitations on his ability to work.  The parameters of an ALJ's hypotheticals need not "include

24  any alleged impairments that the ALJ has rejected as untrue." *Long v. Chater*, 108 F.3d 185, 188 (8th

25  Cir. 1997).  An ALJ may properly "limit a hypothetical to those impairments that are supported by

26  substantial evidence in the record." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  An ALJ

27  may accept or reject restrictions in a hypothetical question and which are not supported by substantial

28  evidence, even when there is conflicting medical evidence. *Osenbrock*, 240 F.3d at 1165; *see*

                                              22

1   *Magallanes v. Bowen*, 881 F.2d 747, 756-757 (9th Cir. 1989).

2       The ALJ simply did not accept impairments which the ALJ found were untrue.  Accordingly, the

3   ALJ did not err in failing to include the impairments in the hypotheticals.

4                                    **CONCLUSION**

5       The Court finds no error in the ALJ's analysis.  As such, the ALJ's decision is supported by

6   substantial evidence in the Record as a whole and based on proper legal standards.  Accordingly, this

7   Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social

8   Security.  The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant

9   Jo Anne B. Barnhart, Commissioner of Social Security and against claimant John H. Lewis, Jr.

10  IT IS SO ORDERED.

11  **Dated:    June 26, 2006**                        **/s/ Lawrence J. O'Neill**
    b9ed48                                      UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

23